May it please the Court, I represent the appellants in this case, and there are three issues before the Court here. Should we have jurisdiction? Or should we reconstitute ourselves as a panel of the Fourth Circuit, sitting as we are in their courtroom? Your Honor, I would prefer it any way the Court wanted. I was actually surprised that the Court took jurisdiction in this matter, but I'm happy to have the panel in whatever manner this Court would like. The three issues, Your Honor, are the contract terms, the contracted issue clear and unambiguous, two was the contract modified as a matter of law, and three was the trial court's finding of fact clearly erroneous regarding the modification. And here are the facts, the basic facts here. In early 1998, BEE Limited, I'll call them BEE Limited for the purpose, they are a manufacturer of emulsifiers. I read your brief, so I think you know the fact. You do agree that North Carolina law controls? Yes, Your Honor. And that North Carolina law, apparently they don't have a parole evidence rule, is that correct? That is to say, you can modify a written contract by oral agreements? You can only modify them by post agreements. So the parole evidence rule still applies for prior contemporaneous, but the allegation in this case by the defendants was that the agreement, which we contend was clear and unambiguous on its face, was modified after, which we say is wrong as a matter of law. Well, why is that wrong as a matter of law? It may be wrong in your mind as a matter of fact, but that of course is a matter for the trial judge. To determine the facts, we have to conclude the trial judge. It's clearly erroneous, isn't that correct? So what is the matter of law in terms of the trial judge's understanding of the subsequent discussions between the parties? That's the puzzling thing. Your Honor, there are several reasons. One, it is admitted that there is no document whatsoever modifying the June 1988 agreement. The court agrees with that. He says, nonetheless, he's heard the evidence, and he says it was modified. And isn't that kind of a credibility determination we're going to have a little trouble getting passed? Except, Your Honor, the court, interestingly in this case, Judge Osteen did his own questioning of the witness, the key witness for the defendants in this case. So what? I had no problem with it, Your Honor. In fact, I believe it helped the case of the appellants in that, in that questioning, at no point did Mr. Hawes, Michael Hawes, the general manager, did he indicate that there was any basis, any basis whatsoever for Tal Schechter, the appellant's representative, to believe that a modification of the agreement had even been discussed. But that's a question of fact. And if we read the conclusions of Bob Judge, who listened to all of that and said, well, I think this is what happened. It's a question of fact if there's evidence in the record. If there's no evidence whatsoever in the record, and what Judge Osteen did is, he asked Mr. Hawes, what did you say to Tal Schechter, and what did he say to you? That set the trend. He did, but he contradicts that in no less than three places, and that's why the questioning of the judge is very, is important. He says it offhand, and he says it on direct examination. But when the judge, because here's what happened. When he was... Judge doesn't have to believe the results of his own cross-examination, does he, to believe that on direct testimony? Hawes said, yes, there was an oral modification. He can, except the judge did a very good job of questioning the witness, I believe, in this case, Your Honor. And so that was the believable evidence, because what, it was a statement. It is, Your Honor, it is. And what Mr. Hawes said was... Where did he say on cross that I'm wrong, there wasn't an agreement? What did the judge say? No, the witness. Where does the witness say that? At transcript sites, well, here's what he says. Where is it? What is he saying? Transcript sites 556 to 566. 556... What page is the Joint Appendix? Joint Appendix. 556 to 566. 556. And in addition... Does he say there never was a oral agreement? No, sir. No? No, sir. He does not at all. But what he says in that, at those sites is, the judge asks him what precisely was said. Why? Where are we at? During that whole ten pages of testimony, the judge asks Mr. Hawes, what was said between the two of you? Because you've testified, Mr. Hawes, that there was a modification. Now tell me what was said. And what Mr. Hawes says is, well, we talked about the value of independent sales reps. And that's what Mr. Hawes says. Mr. Hawes says, we talked about it and we knew the independent sales reps would be a good thing and that we could make more money. But at no point, at no point, and it's also a transcript site 482, at no point when he's talking about it does Mr. Hawes relate it to a modification of the June 1998 agreement. Where does he say in the cross-examination that I didn't discuss a new agreement? He doesn't, Your Honor. He doesn't, but what he does do... He doesn't deny that there was an oral modification? No, sir. He asserts... And what you're quarreling about is whether the content of that oral modification was part of that particular discussion. That's what I'm quarreling about as a matter of law. I still have, because Your Honor asked, what is the evidence that there was a modification as a matter of law? The other issue... I said as a matter of fact. Well, Your Honor, it is my contention that as a matter of law, there was no modification. But even if the court finds that you can't find that as a matter of law, then I have a list of transcript sites that show that the judge was clearly erroneous. And those include the major conflict in the testimony of Mr. Hawes, his own testimony. But where's the conflict? He says at one point there's an agreement, and then he talks about the discussions, and he doesn't mention in the latter part of the transcript, as I understand you to be saying, that there was an agreement. But that's not contradictory to the earlier testimony, is it? Here is a blatant conflict. In an affidavit submitted by Mr. Hawes in support of summary judgment four months before trial, he says, and the affidavit is at transcript site 786 to 787, and it is discussed at transcript 546 to 547. Mr. Hawes says, a couple of months, a couple of months after I started working, in the summer of 1998, there was a modification of the contract. That's the affidavit. It's clear as day at trial. Mr. Hawes then testified because he forgot about his affidavit. He testified, one, that the modification occurred in October of 1999, a year and a half after the contract. That may affect his credibility, but that doesn't require that the judge come out in your way? Well, Your Honor, it is my contention that that makes the finding clearly erroneous. That is one of the things that makes the finding of the judge clearly erroneous, because the at transcript site 382 to 384, and again at 467 to 469, there's actually a flip-flop. Do you have a better argument as to any of the other modifications? Your Honor, that the fact that there were no sales until late 1999, and that his wife took over the books in 2000, but here's a argument about the course of their practice in taking commissions. One of the arguments is that Mr. Hawes could take commissions on rentals, even though the language says net sales price, and the ordinary meaning of sale is not a rental. But Mr. Hawes, if he believed that a rental was a sale, then he would have been taking commissions on rental the entire time. The evidence, and that's at transcript 495 to 496, is that he did not take commissions on rental. He did not. He had the opportunity to, but he did not. In addition, when I... The question is whether there was a modification, and did the judge, just the court here, find that there was a modification? Well, I agree, Your Honor, there's no doubt about it that if this court finds that there was a modification, then my argument about do I have the evidence as to what the terms of the modification is moot. Well, this court does not find anything about whether there was a modification. The question... We're a court of earnest counsel, and we don't make them, and we correct them. And the question is, what did the trial judge find? And is it clear, since it's a question of fact, that it's clearly erroneous? Your Honor, it is... Did he make any finding about whether there was a modification? It is our contention that it is clearly erroneous. It was also our contention that it was modified as a matter of law, but there's other reasons why it was clearly erroneous. Mr. Haw has also testified... Modified or not modified? That it was not modified as a matter of law. Why? What's the legal issue? The legal issue is, did he present evidence as to an agreement between he and Tal Schechter that there was a modification? What he says is, just like in an affidavit, Your Honor, where a person comes out and says, this happened and makes a conclusory statement. The law is that conclusory statements have no value in affidavits if there's no basis for saying it, if there's no detail and no facts. In this case, Mr. Haw started out the case and continued through the case testifying there was a modification, but when pressured by the court to give facts about how that modification occurred and whether Mr. Schechter agreed to it, he could not give the detail. And that's the nature of it. He can't just say that there was a modification. There has to be evidence in the record to support that modification, and that's our contention in this case, Your Honor. The Commercial Casualty Insurance Code case, the case that I presented to the court, North Carolina Supreme Court case, which is at 190 NC 58, it's an old case, it's a 1925 case, says that a violation of a contract, because one of the things that Mr. Haw says is that he paid himself, showed reports to my client, and my client never stopped him. That's one of the basis for him saying that there's a modification. Well, another reason why there is no modification as a matter of law is that that case says that violation of a contract is not an alteration of that contract. And that's North Carolina law on that, and I cite to that, and when I argue that to Your Honor, to the trial judge below at transcript 701 to 702. Your Honor, if I may, I'll reserve the rest of my time for rebuttal. Thank you, Mr. Ross. Mr. Margulis. Mr. Margulis, you did a lot of heavy lifting for you in the previous 15 minutes. I appreciate it, Your Honor. I need all the help I can get. But let me just tell you for myself, I'm rather troubled about the fact that you all had a very clearly developed and laid out written set of agreements, and all of a sudden those agreements seem to have just gone up in smoke because you convinced the trial judge that there had been a lot of conversations about doing something else. North Carolina law apparently permits this sort of thing, but nevertheless, what happens to the written agreement? Well, I guess, Your Honor, I would say, I'm not sure that was a very clear written agreement, the original one. That was a one-paragraph. You're talking about the original letter agreement. That was a one-paragraph agreement. But I think most importantly what the evidence, and this was a very experienced trial judge, where there were two and a half days, what the evidence was here was that he was a company that was learning as it goes. They had not hit the U.S. market. They were trying to figure out how to do U.S. market. They came up with a proposal from Mr. Schechter, completely written by him, so it's construed against him. And then when they hit the U.S. market, they found, well, their proposal was dealing with a different sub-market. They were doing the foodstuffs. And in the foodstuffs, Mr. Schechter's plan worked in that he had the standard plan. You figure the cost of the machine, you add overhead, you add profit. That's the sales price of the machine, and that's what the food industry would take. Mr. Hawes, though, studied the market, studied the machine, and said pharmaceuticals is where we want to go here. And so as the judge found, and he made a specific finding, that the parties had frequent discussions on how best to adopt to the U.S. market, how to structure the business model to make it work, and they were team-oriented, informal, and flexible. And there's loads of evidence that supports that approach. And you would think it's a start-up company. They're trying to figure out where do we fit in there, where's our niche. And so they, in fact, came up with that, came up with a model. And it's counterintuitive to a non-salesperson, but Hawes says, you don't price it according to what it costs you. You price it according to how valuable it is to them. So why don't we shift this market and go to how valuable this is to the pharmaceutical business, and we can increase our margins tremendously. We can pay everybody. The whole way down the chain gets more money. And as a result, the independent agents can be paid outside of my commissions. And what he says, and this is all the way why they modified it, Schechter could have said, well, yeah, we could do that, but I ain't going to modify anything here. But in the real world. What Hawes could have said is, look, here's my proposal for how we ought to interact with the pharmaceutical industry, and I'm setting this out in writing, and let's agree to it. And so could Mr. Schechter. And so could Mr. Schechter. There's no evidence that either of them ever had such an agreement. Correct, because as I think the judge found, this was an informal-type, flexible relationship. And so what happened was, in the real world, Mr. Schechter's looking at, okay, I've got a powerful salesman here who's got good ideas. We make decisions all the time in running businesses that, you know, maybe we need to pay this guy a little bit more. Maybe we need to adjust these things in order to keep everybody happy, because if this model works, we're all going to do very well. And, in fact, they did very well until Mr. Schechter decided he wanted to come back to the U.S. and move the transaction up to Boston, and Mr. Hawes didn't want to go to Boston, so he didn't do that. So I submit there is loads of evidence in the record as to why they did modify this agreement. For example, Mr. Schechter admitted, and this is at Joint Appendix 263-264, we were flexible enough that he could take commissions before the full payment was made, which is exactly what happened. Every commission he took, full payment has been made on those sales. They were all made by July of that year. Mr. Rossaby says there may have been discussions. They were discussed with Mr. Hawes by the district judge, and Mr. Hawes never really showed how the contract was modified. Can you show us anything in the record here that supports the Hawes modification? Well, it goes throughout. I think probably the best is the heavy lifting you did for me when you pointed out the point where he said, absolutely, we modified this. But if you look at the way this transaction went. I think Mr. Rossaby was agreeing that they did discuss there's a modification. What he's saying is, where are the terms of the modification? Where was it specified what that modification entailed? I think probably the best terms are in the financial statements, and I think this is where the credibility really comes in. If you look at the cross-examination of Mr. Schechter, which was throughout Joint Appendix 297 to 309, I was trying to get him, and you can see the judge and I were both trying to get him, what financial statements did you see at the time? He saw the financial statement that showed all of these payments being made to Hawes. He at first tried to say, no, no, I didn't see, and if you look in his memory, he says, I didn't see these financial statements until 2002 after Hawes left. Well, then when I said to him, well, wait a second, here's the financial statement. It was sent to you monthly, right? Yes. And if you look at that, there was so much bobbing and weaving there, the judge was starting to get frustrated. Now, Mr. Schechter, did you see them or not? And he went back and forth and back and forth over ten pages, finally admitted, yes, we see them. I didn't review them closely, he says, but my accountant did. My accountant never said anything was wrong with them. Well, if you think about this again in the real world, when a judge is making a credibility judgment, here's a company that everyone admitted cash flow problems. They're having problems, you know, adapting to this market. So the chief owner is saying that, I know I have cash flow problems, I'm always looking for cash flow, and yet I don't look to see all these tens of thousands of dollars moving out of there. Well, that doesn't make sense, and I think the judge found that didn't make sense. He found that, in fact, someone isn't telling the truth here. And he made that determination that based upon the fact that he was getting all the financial records, based upon the fact that he agreed and approved line by line, as his testimony, the independent agent agreement, which paid all of these types of rental payments, paid 12% to 15% commissions, et cetera, that the way these parties were dealing, the course of dealings they were making, is they were obviously modifying this agreement. We wouldn't have had a case if one of the two parties sat down and said, okay, let's put it all in writing. Well, maybe we would have, because it looks like the way these people put contracts in writing, they leave a lot of room for later argument. But basically, they were fluid. They were moving along. Neither party saw fit to say, okay, wait a second, let's memorialize this change. They didn't do it. But all of the factual documentation on the financial records memorialized that change, and the sub-agent agreement memorialized that change. So I think, as you said in the beginning, when you're looking at a credibility issue, here's a judge that sat there, listened, tried to cross-examine both parties when we were not artfully asking the right questions, and he got in there, he made his judgment, he made his factual determinations, and the conclusions of law clearly are consistent with the factual determinations. I mean, I think Mr. Rosabi is right that if the judge is factually right that they modified this agreement, then there's nothing more to talk about. This case is over. So I submit that the record is clear, especially if you look at the financial statements, and I believe I told you where those were. The cross-examination was 297 to 309, and the financial statements were in 1018 and 1023. It's basically when I was going through what is the payment of these employees' salaries, what these commissions mean. There's a long bit about that, and I think they all support and show that the judge's decision was not clearly erroneous and should be affirmed. Thank you, Your Honor. Your Honor, two brief points. One is there is no, if it is as they say, then there is no consideration for this modification. Here is what is argued. I'm Hawes, and I'm the general manager of this company. I'm supposed to sell, I'm supposed to make sure all the independent reps do their job, and I'm supposed to make money for this company. Make that argument, Your Honor. Your Honor, we did not say that there was no consideration, but what we said was as a matter of law. Because, Your Honor, the issue is if they are saying that the basis of the modification is what they say, the acceptance, and all of the other things that they're saying, then that came in their brief, their responsive brief. They didn't raise anything new. They said the same things. It is simply an argument in response that I can argue, in this case I would contend, in rebuttal to their argument, and that is what is the consideration when all he's saying is I'm going to make you more money. I'm going to make more money for the company, so give me more. You're familiar with the concept of mutuality of promise. Yes, Your Honor. But the difference, Your Honor, is that that was his job in the first place. That's the point. His job was to make money for the company, but the outlandish idea that he's going to bring in independent reps, even though he agreed in the first contract to bring in independent reps, and that by bringing in independent reps that now he should be paid more, that the modification doesn't go. And the second thing, Your Honor, is that, again, Mr. Mardula argued that the fact that financial statements were sent to my client and he didn't do anything about the wrongful payments constitutes a modification. That's not the law in the Continental case that I cited to Your Honors before. Thank you, Your Honors.